# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TABITHA ANDREAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-2422-JAR-GEB** |
| | ) | |
| **GRAY COUNTY BOARD OF** | ) | |
| **COMMISSIONERS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

On July 31, 2019, the Court convened a conference to address Defendants' Motion for Leave to Amend Answer **(ECF No. 79)** and the current deadlines. Plaintiff appeared through counsel, Adam Gasper and Greg Spies. Defendants appeared through counsel, Allen Glendenning.

After careful of review of the parties' written briefs and attached exhibits (ECF Nos. 79, 80-83) and hearing arguments of counsel, the Court orally **GRANTED** the Motion during the hearing (*see* ECF No. 89). The previously-announced ruling of the Court is now memorialized below.

# I. Background[1]

## A. Nature of the Case

This is an employment action wherein Plaintiff alleges unlawful termination from her job as a Deputy Sheriff in Gray County, Kansas. On April 15, 2016, Gray County Undersheriff Jeffrey Sharp terminated Plaintiff Tabitha Andreas' employment. Plaintiff claims she was fired in violation of Title VII[2] based on her sex and as a result of a hostile work environment. She also claims her termination was retaliation for her reports of disparate treatment and workplace injury, and for filing a worker's compensation claim. Andreas was the only female Deputy Sheriff in Gray County, and she claims she was the lowest paid. Plaintiff asserts Sharp held antiquated gender-biased beliefs that women should not be law enforcement officers, and he wanted to punish her because she reported disparate treatment, including demeaning and sexually-charged behavior, directed at her by Deputy John Dowd and others in the department. Plaintiff also claims Sharp refused to provide any reason for her termination.

Defendants deny Plaintiff's allegations. They contend Plaintiff was not harassed or bullied; rather they claim Dowd actually encouraged and offered to provide help and assistance to Plaintiff, both at work and at home. Defendants claim Plaintiff developed personality conflicts with co-workers, superiors, staff while she and Dowd were training at

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1) and Amended Complaint (ECF No. 7), the briefing surrounding the pending motions (ECF Nos. 79-83), and the parties' proposed pretrial order (not yet filed; maintained in chambers file). This background information should not be construed as judicial findings or factual determinations.

[2] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

the Kansas Law Enforcement Training Center ("KLETC"). KLETC administration advised the Sheriff's Department that Plaintiff stood out among students because of the problems she created there. Also, Plaintiff was instructed by the Sheriff not to leave her minor children unsupervised while she was training at KLETC; yet she still did so and declined offers from Sheriff James Kramer, his wife, and Dowd's wife to take them in. Defendants also claim Plaintiff did not engage in any protected activity under Title VII. Although she complained about Dowd to the KLETC administration, she did not present the complaint as unlawful discrimination—only a clash between students.

B.    **Procedural Posture**

Plaintiff filed this case against Gray County Board of Commissioners in July 2017 and amended her complaint as a matter of course to include Defendants Sheriff James Kramer and Undersheriff Jeffrey Sharp in October 2017. (ECF No. 7.)    The matter progressed with minimal court intervention until the first discovery deadline approached in January 2019. At the parties' request, on January 15, 2019, the undersigned U.S. Magistrate Judge held a status conference and all deadlines were postponed to accommodate uncompleted discovery. (*See* Order, ECF No. 53.) On April 5, 2019, the Court granted the parties' joint motion to complete certain depositions and third-party discovery beyond the discovery deadline (Order, ECF No. 70). On April 24, the parties submitted a joint proposed Pretrial Order, which included some disputes and showed discovery remained incomplete. At the parties' request, a deposition conference was held on April 26 (ECF No. 74), and during a follow-up conference on May 8, the undersigned ordered further extensions of the schedule. (ECF No. 77.) At that time, the discovery

deadline was extended to June 28 with a pretrial conference scheduled for July 31, 2019. (*Id*.)  During the April 26 conference, Defendants (through counsel, Allen Glendenning), mentioned they may be seeking leave to amend their answer due to information gained at depositions.  After the parties participated unsuccessfully in mediation, Defendants filed their motion on May 16, 2019.

With this background in mind, the Court turns to Defendants' Motion.

## II.     Plaintiff's Motion for Leave to Amend (ECF No. 79)

As previously noted, the briefing considered by the Court includes Defendants' motion and supporting briefs (ECF Nos. 79-81 and 83) and Plaintiff's Response in Opposition (ECF No. 82).  Prior to the July 31 hearing, the Court thoroughly reviewed the briefing, and the parties' positions are summarized as follows.

### A.     Parties' Arguments

#### 1.     Defendants' Position

Defendants seek to amend their Answer for the first time to add two new affirmative defenses, both of which relate only to damages:  1) the "same decision" defense and 2) the "after-acquired evidence" defense.   Defendants contend newly-discovered evidence demonstrate Plaintiff would have been terminated just weeks after her firing as a result of an incident at her home.   During the deposition of Undersheriff Sharp on April 25, 2019, Plaintiff's counsel asked Sharp whether he was aware of officers arriving at Plaintiff's residence and confiscating one of her weapons, to which Sharp replied he was unaware. (Sharp Dep. 81:6-11; attached as Ex. 4 to Defs.' Mem., ECF No. 80-4.)  Apparently, on May 31, 2016, a Sheriff's Deputy (not named in this lawsuit) was called to Plaintiff's home

after receiving a report she was waving a gun around her children. Plaintiff's weapon was confiscated by the officer, and an incident report was created. (*See* ECF No. 80-2, Ex. 2, *sealed*.) Defendants contend although a Deputy was involved, and a report was placed in the County's electronic "CAD" system,[3] they remained unaware of the incident. (ECF No. 80 at 3.) Defendants argue because the incident would have been clear grounds for Plaintiff's termination, any claim for lost wages after the date of the incident is foreclosed under the after-acquired evidence doctrine. (*Id*. at 2.)

In addition, Defendants demonstrated through deposition transcript they specifically asked Plaintiff whether she had any contact with Gray County officers after her termination, and she did not reveal this incident. (Andreas Dep. Vol. 2, 101:17-24; 103:10-18; attached as Ex. 3 to Defs.' Mem., ECF No. 80-3.) Undersheriff Sharp testified he did not know anything about the incident in which Plaintiff's weapon was confiscated. (Sharp Dep. 81:6-17, attached as Ex. 4 to Defs.' Mem., ECF No. 80-4.)

Defendants' primary argument is they first became aware of the incident during Plaintiff's counsel's questioning at recent depositions. They claim this late discovery of evidence constitutes good cause for the late amendment. They also argue Plaintiff will not be prejudiced, because she has known about this incident since it occurred, and the addition of these affirmative defenses does not foreclose her claim, but merely affects her damages.

---

[3] In the parties' briefing, they refer to the "CAD system" without explanation. The Court presumes this is an electronic method of recording and storing incident and police reports.

### 2.    Plaintiff's Position

In response to Defendants' motion, Plaintiff focuses on undue delay, prejudice, bad faith, and futility of amendment.  She argues Defendants unduly delayed in seeking amendment, because Defendants' own deputy responded to the incident at her home and entered a report into the electronic CAD system, and Sheriff Kramer himself was involved in at least the discussion regarding the report, as evidenced by the report itself.  The report has been in Defendants' custody or control since May 2016, yet Defendants filed their motion to amend three years later.  Additionally, Plaintiff's first document request to Defendants sought "all documents that refer or related to Plaintiff, including but not limited to police reports . . . ."  But Defendants failed to produce this report, and—demonstrating a lack of diligence—apparently neglected to investigate their own records.  (ECF No. 82 at 3-4.)

Plaintiff also claims she will be prejudiced by her inability to conduct discovery directed to the proposed new defenses.  All discovery, including depositions, is complete, and the deadlines in this case have been previously extended.  (*See id*. at 82.)  Plaintiff contends even if she is permitted to conduct additional depositions, she will be forced to pursue new lines of questioning and all of this will be done at a considerable cost.

Plaintiff further contends Defendants are motivated by bad faith to include these defenses.  In Defendants' motion, they claim "neither Sheriff Kramer nor Undersheriff Sharp were involved in this incident and the officer involved. . . did not advise either [men] about this incident." (ECF No. 80 at 2.)  However, the police report itself shows Sheriff Kramer was involved in some capacity—at minimum, he discussed the incident with the

responding officer and determined how it should be reported/handled. Therefore, Defendants falsely portray the Sheriff as being ignorant of the incident.

Finally, Plaintiff argues the amendment should be denied as futile. She essentially claims because the incident happened after her termination, it cannot be used to support either a "same decision" or "after-acquired evidence" defense.

## B. Legal Standards

A brief review of the legal standards underlying the parties' arguments is necessary in considering Defendants' motion.

### 1. Amendment Generally

#### a. Fed. R. Civ. P. 16

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated. It provides that a "schedule may be modified only for good cause and with the judge's consent." When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[4] In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[5] Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

---

[4] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (citations omitted).
[5] *Id.*

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[6] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[7] The party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[8] A lack of prejudice to the nonmovant does not constitute "good cause."[9] The district court has discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines, and such a decision is reviewed only for abuse of discretion.[10] If the Court finds Rule 16 is satisfied, the Court then analyzes the request for amendment under Fed. R. Civ. P. 15.

### b.    Fed. R. Civ. P. 15

The Rule 15 standard for permitting a party to amend his or her complaint is well-established. A party may amend its pleading as a matter of course under Rule 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

---

[6] *Id.*

[7] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (citing *Deghand v. Wal–Mart Stores, Inc*., 904 F. Supp. 1218, 1221 (D. Kan. 1995) (internal citations omitted)).

[8] *Id.*

[9] *Id.* (citing *Deghand*, 904 F. Supp. at 1221).

[10] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[11] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[12] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[13] The Tenth Circuit acknowledged Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[14] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[15]

### 2. Defendants' Proposed Defenses

A brief review of the law surrounding the proposed new defenses is germane to the discussion, given Plaintiff's argument that each defense is futile.

---

[11] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[12] *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc*., No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[13] *Hinkle v. Mid-Continent Cas. Co*., No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[14] *Carefusion 213*, 2010 WL 4004874, at *4 (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

[15] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

### a. "Same Decision" Defense

Defendants' claim it would have terminated Plaintiff anyway, due to the incident at her home, regardless of her gender or her allegedly protected complaints, is the "same decision" defense. Many of the District of Kansas cases discussing the defense have been in the context of a former employee accusing his/her employer of retaliation for the employee's exercise of his/her First Amendment right to free speech. In that context, courts have held the employer "can *escape liability* by showing that she would have taken the same action even absent the protected conduct."[16] But in a 2008 District of Kansas case involving a Title VII employment action, the court found the "defendant *does not avoid liability* by proving its same decision defense; rather, plaintiff's *remedies are limited* if defendant proves that defense.[17] In any event, the employer must prove by a preponderance of the evidence that it would have terminated the employee even in the absence of the employee's protected conduct.[18]

### b. After-Acquired Evidence Doctrine

Operating in a similar manner to the same decision defense is the "after-acquired evidence" doctrine. Courts in this District have explained the after-acquired evidence doctrine as follows:

---

[16] *Brantley v. Unified Sch. Dist. No. 500*, No. 08-2059-KHV, 2008 WL 2079411, at *4 (D. Kan. May 15, 2008) (citing *Bd. of County Comm'rs of Wabaunsee County v. Umbehr,* 518 U.S. 668, 675 (1996); *see also Ballard v. Muskogee Reg'l Med. Ctr.,* 238 F.3d 1250, 1253 (10th Cir. 2001) ("anyway" defense is complete bar to liability)) (emphasis added).
[17] *Broxterman v. Falley's Inc.*, No. 07-2439-JWL, 2008 WL 4499981, at *7 (D. Kan. Oct. 3, 2008) (citing 42 U.S.C. § 2000e–5(g)(2)(B) (emphasis added).
[18] *Id.; see also Brantley*, 2008 WL 2079411, at *4.

The after-acquired evidence doctrine allows employers to diminish damages in Title VII employment discrimination cases by introducing evidence of an employee's wrongdoing that the employer discovered after its initial employment decision. Although this defense does not appear to have any bearing on liability in a Title VII case, it might impact the specific remedy to be ordered or the amount of damages to be awarded.[19]

The Tenth Circuit explained the after-acquired evidence doctrine as follows:

> Under [the U.S. Supreme Court case of *McKennon v. Nashville Banner Publ'g Co.*], information that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated Title VII because it necessarily played no role in the actual decision. Nevertheless, if an employer learns of employee wrongdoing after it has fired that employee, and it can prove that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge, the employee may not obtain front pay or reinstatement and may also be denied backpay to which she would otherwise be entitled." (internal citations and quotations omitted.)[20]

As pleaded in Defendants' proposed amended Answer, the two affirmative defenses would operate in the same manner to reduce Plaintiff's damages.

With the above standards in mind, the Court reviews Defendants' motion.

## C.    Discussion

As outlined above, the Court must first determine whether Defendants have shown good cause under Rule 16 for their untimely request.  Finding good cause, the Court then considers the Rule 15 factors for amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.

---

[19] *Livingston*, 2012 WL 2045292, at *2 (citing *Marx v. Schnuck Mkts., Inc.,* 869 F. Supp. 895, 897 (D. Kan. 1994)).
[20] *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 555 (10th Cir. 1999) (citing *McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352 (1995)).

### 1. Good Cause

To show good cause under Rule 16, as the party seeking to amend the schedule, Defendants are "expected to show good faith on [their] part and some reasonable basis for not meeting the deadline."[21] During oral arguments, defense counsel reiterated the argument they first discovered the incident during the April 25 deposition, when Plaintiff's counsel asked Undersheriff Sharp about it. Defendants admit having this information at an earlier date would have been preferable but contend Sheriff Kramer was only indirectly involved and simply forgot about the incident until he was reminded of it during Sharp's deposition.

After reviewing the briefing, including the deposition transcripts, and hearing arguments of counsel, the Court finds Defendants seek the amendment in good faith. Nothing in the record suggests Defendants acted purposefully in failing to uncover the incident report. In fact, waiting until the close of discovery to seek amendment certainly does not work in Defendants' favor.

Finding Defendants demonstrated good faith, the Court further finds their explanation for failing to file their motion within the scheduling order deadline is reasonable. Therefore, the Court finds Rule 16 satisfied, and continues to analyze the request for amendment under the factors outlined in Rule 15.

---

[21] *Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV-KGS, 2019 WL 1081781, at *2 (D. Kan. Mar. 6, 2019) (citing *Deghand*, 904 F. Supp. at 1221).

### 2. Timeliness

There is no question Defendants' motion was filed long after the deadline for motions to amend. However, the question is whether Defendants unduly delayed in seeking their amendment, which is similar to the good-cause analysis conducted above.[22] As outlined, the Court accepts Defendants' explanation that the information was first divulged during depositions on April 25, 2019. The parties participated in mediation on May 13, and after mediation was unsuccessful, Defendants filed their motion to amend three days later, on May 16. Because Defendants acted in a timely fashion to file the motion within a few weeks of the deposition, this factor weighs in favor of permitting amendment.

### 3. Prejudice

The next factor in determining amendment is prejudice. As the party opposing the amendment, Plaintiff bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[23] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[24] While any amendment invariably causes some "practical prejudice," undue prejudice means the amendment "would work an injustice to the" party opposing amendment.[25] The

---

[22] *Id.* at *3 (citing *Five Rivers Ranch Cattle Feeding, LLC v. KLA Envtl. Servs.*, No. 08-2185-EFM, 2010 WL 2609426, at *3 (D. Kan. June 25, 2010).

[23] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).

[24] *Id.* (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004)).

[25] *Id.* (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).

Tenth Circuit has found prejudice to be the "most important factor" to consider when determining amendment.[26]

Plaintiff claims she will be prejudiced by her inability to conduct additional discovery, and even if she is permitted to conduct additional depositions, she will be forced to pursue new lines of questioning. She argues all of this would be accomplished at a considerable cost to Plaintiff. But the Court finds her argument unpersuasive, considering Plaintiff already questioned at least one witness regarding this incident and arrived at the deposition prepared for the same.

Additionally, it is difficult to find Plaintiff is unduly prejudiced by the inclusion of an incident she was part of, failed to disclose, yet then opened the door to including. And though Plaintiff understandably has concerns regarding her ability to keep a future jury from being biased against her if the full extent of the incident is revealed at trial, the Court finds, at this stage, the concern does not equate to undue prejudice. Plaintiff will have the opportunity to limit the presentation of evidence at trial through later motions in limine.

Even without the amendment issue, the Court finds the parties were not prepared for pretrial conference; therefore, the amendment will not unduly prejudice the progress of this case. The parties' draft pretrial order submitted informally on July 12, 2019 indicates they had at least one more deposition outstanding, regardless of the amendment dispute.[27] That same proposed order included multiple disagreements between the parties, including

---

[26] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

[27] Maintained in Chambers' file. The proposed pretrial order states, ""discovery is incomplete, in that the deposition of Gray County's 30(b)(6) designee has not been completed."

portions of the parties' claims and a dispute regarding the location of trial.[28] Even without the proposed amendment, it was highly likely the trial date would have been compromised as a result of other concerns. Therefore, Plaintiff will have ample time to request and accomplish any minimal additional discovery. The Court's consideration of this most important factor finds no undue prejudice to Plaintiff in permitting the amendment.

### 4.    Bad Faith

Finding Defendants demonstrated good cause for their delay in seeking amendment, and no undue prejudice exists, the Court next considers whether the amendment is pursued in good faith. As noted in the Rule 16 good-cause analysis above, the Court finds no evidence that Defendants acted intentionally in waiting to seek amendment. Defendants simply had no motivation to deliberately conceal this incident, which could significantly limit Plaintiff's claim for damages. And although not rising to the level of bad faith, the Court is frankly troubled by the actions of both sides. Even if Sheriff Kramer *should have* known about the incident earlier, Plaintiff *certainly* knew about it and chose not to divulge it—even during discovery in response to direct questions regarding her interactions with law enforcement.

Because neither side appears completely innocent in the belated discovery of the incident at Plaintiff's home, this factor appears neutral under these facts. In its discretion, the Court finds it proper to err on the side of permitting amendment.

---

[28] Draft pretrial order dated July 12, 2019, page 12 (maintained in Chambers file).

### 5. Futility

The final factor addressed under Rule 15 is the potential futility of the proposed amendment. The party opposing amendment bears the burden of establishing its futility.[29] When a defendant moves to amend an answer to add an affirmative defense, futility is examined in the context of a motion to strike under Fed. R. Civ. P. 12(f).[30] Rule 12(f) states that the court "may strike from a pleading an insufficient defense . . . ." "Within the meaning of Rule 12(f), a defense is insufficient if it cannot succeed, as a matter of law, under any circumstances."[31] To warrant striking a defense, its insufficiency must be "clearly apparent" and "no factual issues exist that should be determined in a hearing on the merits."[32]

"A motion to strike an affirmative defense as insufficient is disfavored as a drastic remedy."[33] If there is any doubt as to whether to strike a matter, courts should deny the motion.[34] Courts will usually deny a motion to strike unless the allegations have "'no possible relation to the controversy and may prejudice the opposing party.'"[35]

---

[29] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[30] *Livingston*, 2012 WL 2045292, at *2 (citing *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011)).

[31] *Id.* (citing *Layne Christensen Co.*, 2011 WL 3847076, at *6) (internal citations and quotations omitted).

[32] *Id.* (citing *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 649 (D. Kan. 2009)).

[33] *Id.* (citing *Wilhelm v. TLC Lawn Care, Inc.,* No. 07–2465–KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008)).

[34] *Id.* (citing *Miller v. Pfizer, Inc.,* No. Civ. A. 99–2326–KHV, 1999 WL 1063046, at *3 (D. Kan. Nov. 10, 1999)).

[35] *Id.* (citing *United States ex rel. Smith v. Boeing Co.,* No. 05–1073–WEB, 2009 WL 2486338, at *3 (D. Kan. Aug. 13, 2009) (other citations omitted).

Plaintiff's primary futility argument against both defenses is the timing of the incident itself. Plaintiff claims because the incident took place six weeks *after* her termination, it cannot be used as a defense, and therefore the amendment is futile. This is true as to Defendants' *liability* for Plaintiff's termination and whether it violated Title VII. However, the Tenth Circuit has alluded to such post-termination conduct *limiting relief*, which is precisely what Defendants are trying to do.

Although much of the caselaw involving similar affirmative defenses references conduct occurring before termination, the Tenth Circuit in *Medlock v. Ortho Biotech, Inc.*[36] went on to further explain its potential position on post-termination conduct:

> "Although *McKennon* states as a general rule that front pay and reinstatement are not appropriate remedies where there is after-acquired evidence of *pre-termination* wrongdoing, the Court was careful to state that "[t]he proper boundaries of remedial relief in the general class of cases where, *after* termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case." (internal quotations and citations omitted.)[37]

Most importantly, the Tenth Circuit noted, "we do not foreclose the possibility that in appropriate circumstances the logic of *McKennon* may permit *certain limitations on relief based on post-termination conduct*."[38]

In *Medlock*, the district court failed to give a *McKennon*-type jury instruction, and the plaintiff appealed. However, in *Medlock*, the defendant was arguing the plaintiff would

---

[36] *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 555 (10th Cir. 1999).
[37] *Id.*
[38] *Id.* (emphasis added).

have been terminated based upon his post-termination conduct at his unemployment hearing, where he touched and cursed at defense counsel.[39]   The Tenth Circuit found the failure to give the instruction was not reversible error, because the post-termination conduct occurred at a hearing directly resulting from the plaintiff's termination. In this case, however, Plaintiff makes no claim that her conduct occurred as a direct result of her termination.

The Tenth Circuit again addressed post-termination conduct in a more recent case, *Zisumbo v. Ogden Reg'l Med. Ctr.*[40] In *Zisumbo* the Circuit discussed:

> "Like back pay, front pay and reinstatement may also be limited based on an employee's actions: 'It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.'[41] Although *McKennon* dealt only with "after-acquired evidence of *pre-termination* wrongdoing," we have suggested that its 'logic ... may permit certain limitations on relief based on *post-termination* conduct' too."[42]

The court in *Zisumbo* acknowledged federal courts disagree whether post-termination conduct can limit an employee's right to front pay, reinstatement, or back pay.[43]   And although the Tenth Circuit did not go so far as to broadly hold post-termination conduct *always* limits an employee's relief, the court relied on the facts at hand to limit relief in appropriate factual circumstances.[44]

---

[39] *Id*. at 555.
[40] *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1205 (10th Cir. 2015).
[41] *Id*. (citing *McKennon,* 513 U.S. at 362).
[42] *Id*.
[43] *Id*.
[44] *Id*.

In *Zisubmo*, the plaintiff argued his post-termination misdemeanor conviction should not limit his right to front pay, reinstatement, or back pay because the defendant did not show it would have terminated him for the crime. The Circuit cited *McKennon* to state, "'[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit.'"[45] The *Zisumbo* court found:

> . . . we conclude the district court did not abuse its discretion in concluding that ORMC would have terminated Zisumbo for his misdemeanor conviction. Nor did the district court abuse its discretion in finding that Zisumbo's misdemeanor assault conviction did not directly result from his termination. We therefore affirm the district court's decision limiting Zisumbo's back pay to the period between his termination and his assault conviction.[46]

Again, in the instant case, neither party indicates the incident at Plaintiff's home resulted from her termination; therefore the Court does not address this issue. Following the Tenth Circuit's logic in *Medlock* and *Zisumbo*, Defendants' proposed amendments to limit Plaintiff's relief do not appear clearly insufficient. Because the defenses do not appear insufficient, the Court cannot find the amendment futile.

### D.    Conclusion

In the Court's discretion, for the reasons stated herein and recognizing Plaintiff will have an opportunity to challenge the sufficiency of the newly-added defenses through facts later developed and perhaps additional motion practice, the Court will not deny

---

[45] *Id.* (quoting *McKennon*, 513 U.S. at 362).
[46] *Zisumbo*, 801 F.3d at 1207.

Defendants' proposed amendment based on futility. Additionally, Plaintiff failed to demonstrate undue prejudice, particularly when she is not blindsided by the new information—only surprised by its belated discovery. Because the balance of factors weigh in favor of amendment, the Court will permit the filing of the proposed amendment, which is consistent with the "spirit of the federal rules of civil procedure to encourage decisions on the merits."[47] In the interests of justice, the Court allows Defendants to amend their Answer.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Leave to Amend Answer **(ECF No. 79)** is **GRANTED**. During the July 31, 2019 hearing, Defendants were ordered to file their Amended Answer on or before **August 9, 2019**, and they did so. (Am. Answer, ECF No. 88.) The parties are strongly cautioned future amendments to the pleadings, although not outright prohibited, will be met with considerable scrutiny[48] given the length of litigation and previous opportunities to articulate the parties' claims.

## III.    Modified Scheduling Order

In light of the amendment permitted herein and the discovery which remains outstanding, the Court finds it appropriate to modify the schedule.

After thorough discussion with the parties during the conference, the Court establishes the following revised deadlines:

---

[47] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

[48] *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir.1993); *Foman,* 371 U.S. at 182) (noting "failure to cure deficiencies by amendments previously allowed" is one reason the court may use to deny leave to amend).

| Event | Deadline/Setting |
|---|---|
| All discovery completed | 9/27/19 |
| All potentially dispositive motions (e.g., summary judgment) and motions challenging admissibility of expert testimony | 11/15/19 |
| Proposed pretrial order due | 10/9/19 |
| Pretrial conference | 10/23/19 @ 10:00 a.m. |
| Jury Trial in Kansas City; ETT: 5 days | 7/14/20 @ 9:00 a.m. |

The pretrial conference set for **October 23, 2019 at 10:00 a.m**. will be conducted by dial-in telephone conference unless the judge determines that the proposed pretrial order is not in the appropriate format or that there are some problems requiring counsel to appear in person.  Counsel and any pro se parties must dial **888-363-4749** and enter Access Code **9686294** to join the conference.  Unless otherwise notified, the undersigned U.S. Magistrate Judge will conduct the conference.

No later than **October 9, 2019**, defense counsel must submit the parties' proposed pretrial order (formatted in Word) as an attachment to an e-mail sent to ksd_birzer_chambers@ksd.uscourts.gov.  The proposed pretrial order must not be filed with the Clerk's Office.  It must be in the form available on the Court's website: http://ksd.uscourts.gov/index.php/forms/?open=CivilForms.  The parties must affix their signatures to the proposed pretrial order according to the procedures governing multiple signatures set forth in paragraphs II(C) of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases*.

The parties expect the jury trial of this case to take approximately **five (5)** trial days. This case will be tried in Kansas City, Kansas. This case is set for trial on the Court's docket beginning on **July 14, 2020 at 9:00 a.m.** Unless otherwise ordered, this is not a "special" or "No. 1" trial setting. Therefore, during the month preceding the trial docket setting, counsel should stay in contact with the trial judge's courtroom deputy to determine the day of the docket on which trial of the case actually will begin. The trial setting may be changed only by order of the judge presiding over the trial. The parties and counsel are advised that any future request for extension of deadlines that includes a request to extend the dispositive motion deadline will likely result in a new (i.e., later) trial date.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, the Court **GRANTS** Defendants' Motion for Leave to Amend Answer (**ECF No. 79**).

**IT IS FURTHER ORDERED** that the schedule in this case is modified as set forth above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 21st day of August, 2019.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge
